[No. 4509.]

## BEAMAN v. THE INTERSTATE NATIONAL BANK.

1. **Chattel Mortgage—Attachment—Replevin.**

    A chattel mortgagee in actual and exclusive possession of the mortgaged property is entitled to replevy it from an officer holding it under a writ of attachment issued against the mortgagor after the execution of the mortgage.

2. **Same—Actual Possession—Evidence.**

    A bank held notes secured by a chattel mortgage on cattle. The mortgagor desired to remove the cattle to another state for pasturage, the bank consenting on the condition that the security be not impaired, and it sent a representative with the cattle and also through a representative notified the owner of the pasture that the cattle were not to be removed without instructions from the bank and later again notified such owner by letter and telegram to the same effect, whereupon the latter notified the bank that he would hold the cattle subject to its order. Held, that such facts were sufficient to show that the bank was in actual possession of the cattle.

3. **Same—Description of Property—Attachment—Replevin—Evidence.**

    Where, in replevin by a mortgagee of cattle to recover them from an officer holding under a writ of attachment against the mortgagor, the evidence identified the cattle which plaintiff recovered by the writ of replevin as the same cattle included in the mortgage, and of which the mortgagee had actual possession at the time of the attachment, the fact that the brands described in the mortgage did not correspond with those upon the cattle recovered was not material, as under such circumstances the attaching creditor was not misled or prejudiced by any description of brands.

*Error to the District Court of Pueblo County.*
*Hon. John H. Voorhees, Judge.*

Messrs. CRANE & PATRICK, Mr. A. J. FIRES, Mr. DUNCAN SMITH, and Messrs. WALDRON & THOMPSON, for plaintiff in error.

Mr. CHARLES E. GAST, for defendant in error.

CHIEF JUSTICE GABBERT delivered the opinion of the court:

Defendant in error, as plaintiff, brought suit in replevin to recover from plaintiff in error, as defendant, the possession of certain cattle. These cattle were held by defendant, as sheriff, under a writ of attachment, and were originally located in Butler County, Kansas, and owned by G. A. Yantis. He executed certain chattel mortgages thereon to the firm of Tamblyn & Tamblyn, which mortgages, together with the notes secured thereby, were transferred to the plaintiff bank, or the Kansas City Cattle Loan Company. Yantis was desirous of moving these cattle to Colorado. The bank and Tamblyn & Tamblyn had no objection, provided their security was not impaired. For the purpose of obviating any question on this score, Yantis and Tamblyn & Tamblyn, with the knowledge and consent of the bank, executed an agreement which provided, in effect, that the cattle should be shipped in the name of the plaintiff bank to pastures in Colorado furnished, or to be furnished, by Yantis or Tamblyn & Tamblyn; that the freight charges, pasturage and expenses incurred should be borne by Yantis and Tamblyn & Tamblyn; that a representative of the plaintiff bank was to be present and assist in tallying the cattle on the cars, and, in a general way, look after its interests. This agreement further recited that its terms should not in any way interfere with the liens created by the chattel mortgages or impair any of the conditions thereof. Under this arrangement the cattle were shipped to Colorado in the name of the bank, in care of Yantis. A representative of the bank came to Colorado with the last train load. The cattle were placed in the Knight pasture. There seems to be some question

whether this pasture was controlled by W. L. or Clarence Knight—father and son; but both were notified by a representative of the bank to hold them, subject to the bank's order, and not to permit any of them to be removed without instructions to that effect from the bank. Later, W. L. Knight was notified by the bank by wire and letter not to permit the cattle to be moved without definite instructions from the bank. He answered that he would hold the cattle subject to the bank's order. Thereafter a creditor of Yantis brought suit in attachment, and under the writ issued therein the defendant sheriff levied upon the cattle. To recover the possession of the cattle, the bank brought its action in replevin. In its complaint the plaintiff alleged that the possession of the cattle had been transferred by Yantis to it, and that it was in such possession at the time of the levy of the writ. The court instructed the jury to the effect that if they believed that the possession of the cattle was turned over to the bank, and that the bank thereafter held exclusive possession of them, down to the date of the levy of the attachment, that it could maintain replevin. A trial resulted in a verdict for defendant in the sum of several thousand dollars which, apparently, was the value of the cattle which the jury found the bank was not entitled to hold, either by virtue of the chattel mortgages or the agreement under which the cattle were shipped to Colorado, and awarded the plaintiff the possession of the remainder of the cattle in controversy. The defendant sheriff brings the cause here for review on error. His contention is, that the bank was not entitled to the possession of any of the cattle taken under the writ of replevin. In support of this claim, his counsel raises many interesting questions touching the validity of the mortgages as against creditors, and the extent to which the bank was bound by

the particular brands by which the cattle were described in the mortgages, none of which, we think, are material, because, in our opinion, two questions are conclusive of the case, which must be resolved in favor of the plaintiff. (1) Plaintiff was in the actual and exclusive possession of the cattle awarded it by the verdict at the time of the levy of the writ of attachment; and (2), such cattle were the identical ones described in the chattel mortgages.

The cattle were shipped to Colorado in the name of the bank, in care of Yantis. This was for the purpose of enabling him to receive them. They were placed in the pasture which the parties had previously agreed upon. The bank was not to be put to any expense on account of the removal, or for the pasture. Yantis and Tamblyn & Tamblyn were to pay these expenses. These matters, however, would only be material in the event the *bona fides* of the transaction, as between the bank, and Yantis and Tamblyn & Tamblyn, was questioned. Regarding the good faith of all these parties there is no doubt, because it clearly appears from the testimony that the bank held paper of Yantis and Tamblyn & Tamblyn which it was intended should be secured by these cattle. When they were placed in the pasture the Knights were expressly notified by the representative of the bank that they should not allow them to be moved without orders from the bank. Mr. W. L. Knight evidently recognized that he was in the possession of the cattle for the bank, for we find, later, that when he was notified again, by wire and letter, not to permit the cattle to be moved except on instructions from the bank, he replied that he held them subject to its order. Yantis was in Colorado, and perhaps in the vicinity of the cattle; but he was exercising no control over them, and could exercise none, except through the order of the

bank. We think this testimony clearly demonstrates that the actual and exclusive possession of the cattle was in the bank at the time of the levy of the writ of attachment.

It may be claimed, however, that there is a conflict in the testimony on the subject of possession by the bank. If there is, that conflict was resolved in favor of the plaintiff by the jury, who were directed that in determining this question it was their duty "to consider all the facts and circumstances that attended the handling of the cattle, such as shipping of the same from Kansas to Colorado; the manner in which they were controlled when they were in the Knight pasture, and all other facts in evidence relative to the handling of said cattle."

On behalf of the sheriff, it is urged that the creditors of Yantis were not bound by any description of the cattle except such as appeared in the chattel mortgages. They were described by certain brands, and it is contended that these brands did not correspond with those upon the cattle awarded the plaintiff. The brands would aid in identifying the cattle, but were not the only aids which could be resorted to for that purpose. The testimony, independent of the brands, established that the cattle awarded the plaintiff were the identical cattle included in the mortgages, shipped to Colorado, and which it was in the actual and exclusive possession of at the time the writ of attachment was levied. In these circumstances, the attaching creditor of Yantis was neither misled nor prejudiced by any description by brands.

The judgment of the district court will be affirmed.

*Affirmed.*

Decision *en banc.*

JUSTICES STEELE and GUNTER dissent.